will hear argument first in case number 20-3408, United States v. Dumas. Whenever you're ready. Thank you, Your Honor. Good morning. My name is Andrew Streicher. I represent the fellow friends of Dumas. It's an honor and a privilege to be before you today. Your Honors, what I think is most relevant in this case is this court's ruling in the holding of the United States v. Rosen. And we are not here asking for any differentiation in that, in fact, asking you to withhold your ruling in Rosen. But in this particular case, applying the facts in Rosen, we believe, requires that the good faith exception should not apply. What we have here unequivocally and unquestionably to do is an unconstitutional debate over broad warrant. That was signed at the request of a local common-proof officer who was a member of the FBI task force that went to a local counter-justice and sought an unruly debate on unconstitutional broad warrant. So would you detail in what respects you say it was unconstitutionally vague and overbroad? I recognize that it mentioned a statute that covers a great variety of different crimes, a number of which had nothing to do with the crime committed. But in what respects was it unconstitutionally vague and overbroad? So our position, Your Honor, is that the request for the search of 47 distinct criminal allegations and crimes in four entire articles of the New York State Penal Law and not particularizing the crime made unconstitutionally broad, it doesn't fit within the findings of United States of Leon and Gallup. That is where we believe the warrant was unsufficiently particularized in order to provide a probable cause. So it mentioned too many crimes. Correct. But the narration of circumstances that supported the issuance of the warrant were clear that it had nothing to do with old people in retirement shelters, that it was about child molestation. Your Honor, yes. But the case law from this circuit evidence of importance is that it has to be sufficiently particularized, and it's not particularly going into specific offenses. Therefore, it makes the warrant unconstitutionally vague and overbroad. The fact that it has been conceded by the government and found by Judge Mardu as well. May I ask, Counselor, my reading of Gallupan was that that warrant was actually broader and that Rosa relied on three of the four same articles that was relied on in this matter. So could you figure out or help us articulate where in between those two your case lies? Yes. So in particular, Judge, we believe the fourth factor, and we have that the warrant is so patiently deficient that the reliance is on the unreasonable, is where the differentiation, you know, sets forth and comes in. And it's based upon a lot of factual circumstances that are set forth in the actual warrant application. And if you look in these court holdings in Gallupan and in Munda, and specifically Rosa, there's a lot of attention to specific facts with respect to the investigation that the police officers conducted in the case. The child that was involved with being molested, the child that actually saw the child pornography, were involved, they were interviewed. And Rosa, you have the exigency circumstances that it was done in the morning, and it was more of a declarative mistake. Our position in this case is the local town police officer submitted a boilerplate application and warrant to the judge. It was not sufficiently perfect. If you look in the record, 90 percent of that warrant is the boilerplate. And that warrant… Well, certainly you wouldn't ask us to write a per se rule that says, you know, using some figure of boilerplate is per se improper, right? Absolutely not, Judge. In fact, we just believe under the finding in Rosa, in this court's ruling in Rosa, that says the particularity requirements of a warrant are necessary and are still available, must be applied here. And in this particular case, based upon the fact that, you know, we learned that the photographs themselves were redacted, which in itself sets forth a nefarious insinuation, but the worst things that could be there lie within the problem, in addition to where you have in Rosa, where there was a significant police investigation. You had exigent circumstances. In this case, there was an attempt to obtain, and then six days later, they applied for a warrant without doing any other intervening investigation. In some of those other cases, you know, Rolando, Galpin, and also with respect to the child pornography aspect of it, there were hits on the task force with trying to enter pornographic websites. Here, we have a chat that was submitted, tipped to a hotline, and then within there, there's a portion of that chat that at the end of it says, just kidding. But the chat was with someone that knew him well and that inspired someone to be concerned enough to call the FBI so that just kidding didn't inoculate the earlier messages for someone that actually knew him. Is that correct? I'm just having a hard time seeing where the lack of probable cause is. Maybe you can explain where, even if we'd had a corrected warrant that had dealt with all of the omissions that you think are improper, why there wouldn't be enough left in a hypothetical corrected warrant. Sure. So I guess first of all, if I could back up just briefly, I would say we don't necessarily need the probable cause as one of the factors that the neon or computers do. And I would ask that the state not be a part of it. The way that it's written is we accept everything as true. And if you look at the context of the warrant and the record, the actual first picture that was sent as identifiable as Dumas is out of time and order. Is what? Is out of time and order. There's a stamp on that first picture of Dumas that says 6.59. And these other chats are happening at about 4 in the afternoon. So it's not a concurrent set of timing issues that are within that context. So that's where I think just eliminating... Your argument is that that was intentionally misleading? My argument is not that that was intentionally misleading. What my argument is, by not referencing that aspect of it, we're not taking that into consideration. It's not contemporaneous with respect to the timing of the warrant and the necessary potential agency with respect to that. I'm sorry. I don't understand. What difference does it make that it was out of time and order? So what? How does that affect whether there was probable cause? So the difference is, Judge, the probable cause with respect to that is that it wasn't contemporaneous. And that picture in and of itself wasn't necessarily the parties. It's the picture of that in conjunction with all the rest of the chats that may be the issuance of this warrant. Again, I would effectively say that we believe the fourth factor under Leon is the warrant is so patiently deficient that it reminds us how reasonable it is. It's the proper grounds for that to be consistent with this Court's ruling in Bolsa. Thank you. You reserved some time for rebuttal. Can I hear from the government? Yes, ma'am. May it please the Court. Elizabeth Groom for the United States. Under the totality of the circumstances here, the search warrant application, the invalidated search warrant itself, and the execution of the search warrant, it is clear that the warrant's citations to articles of New York State penal law instead of specific statutes was isolated negligence and not the kind of deliberate conduct requiring suppression. Let me turn first to the application. The application made clear that the purpose of the search was to find evidence of two crimes, sexual abuse of a child and sexual deformance of a child. The application also made clear that there was probable cause for both of these crimes. The applicant swore, based on his training and experience, that the language used by Mr. Dumas indicates that he may be sexually abusing the boy in the photograph and that computers may contain images of child pornography. Can I ask, was it inherently misleading, or why wasn't it inherently misleading to redact the boy's photograph and redact the actor having described it as being of Dumas? It was not misleading because the application itself stated only force of show, making clear that his face could not be seen. And it was a fair inference, as the district court found, based on the chats themselves, that Dumas was the man in the photograph. But even if that statement were removed, Your Honor, and the statement himself was removed, that would not alter the probable cause finding here. And is that because it was not just child pornography? You've conceded that that photo that was so concerning to people is not child pornography, right? Yes, Your Honor. So would we need to have concluded that it was abuse? Your Honor, although the photograph is not child pornography, it still could be evidence of the fact that there could be child pornography. Can you explain that? Why? Yes, I'm sorry, Your Honor. Please, go ahead. Yes, so the probable cause finding for child pornography in this case is based on the chats themselves where Mr. Dumas is bragging about sexually abusing the child and claiming that the photo was from today. In other words, ongoing sexual abuse of the child in that photo. So it's not so much the content, and it is not the content of the specific photo, but the fact that he links his bragging text about sexually abusing the child to a photo that he showed to the witness. And I would like to be clear, too, that the op-ed never claimed that that photo was child pornography. And the government is not relying on the fact that it was child pornography in any way, but the photo still gives context to the finding and supports the finding of the probable cause. Is that where what your adversary was saying before might make a difference, that the photo was not in the same time window as the chats? So that was the other photo that Mr. Soprano was discussing, Your Honor. That was the photo of the defendant, but she is not disputed as him with the substance on his face. So it would not make a difference. The application also identified both the computer and the cell phone as capable of transmitting messages establishing probable cause for both the crimes, sexual abuse of a minor, and child pornography. Also, this application is just as particular as the application cited by this Court in Rosa. In Rosa, the court stated that the property to be searched was evidence of three crimes, and the citations were to articles of New York State penal law instead of specific statutes. And it included two of the articles present in our case, Article 130, sex offenses, and Article 263, sexual performance by a child. According to the warrant, it's also more particular than the warrant in Rosa. In Rosa, the warrant allowed officers to seize any named item which would tend to identify criminal conduct. There was no limitation to any reference to New York State penal law. Here, of course, there were references to four articles of New York State penal law with relevant titles, although, of course, they were over-inclusive. The warrant also offered additional guidance. In Paragraph 4, and I'm paraphrasing. I'm reading some language. May I ask a question? Doesn't the time elapse that occurred between when the tip came in and when Smith applied for the warrant suggest that maybe there wasn't abuse because of the time elapse, that maybe it wasn't as serious of a matter? Because in other situations, when the abuse seemed to be ongoing and real, people responded much more quickly. So what are we supposed to infer from the time elapse? The exigency in Rosa was obviously far more severe and was a very severe amount of exigency, and the officers acted very quickly. The record is clear here that the tip was made to the national hotline six days before the FBI agent called the witness and asked for access to the chest and then applied for the warrant. Maybe I'm not being clear. Doesn't that six days provide at least some inference that maybe it wasn't abuse because had it been more obviously dangerous or that somebody would have reacted quicker? Your Honor, it could support an inference that the FBI was not as concerned that it was abuse. As your Honor was pointing out, we would have expected the FBI to act more quickly if they were very concerned about abuse. Of course, there's nothing in the record about what else they had going on, how long it took for the tip to reach people, all of them from the national hotline to Albany, et cetera. Well, I mean, it seems to me that your probable cause being that the document that you looked at or the photograph that's at issue is not pornography is better for abuse, that you have more probable cause for the idea of abuse because of the text bragging, as you pointed out, and because of the photograph that he at least purported was him with another child. But I think what cuts against your case in a major way is it was not to the experts in the FBI who were dealing with this. It didn't seem to be taken too seriously. And I'm hoping you can help us figure out what we're supposed to do with that. Your Honor, I think two things. As you've already pointed out, the witness took this seriously enough that he called the FBI. And I don't think that the fact that it took the FBI six days to react undermines the probable cause showing on child pornography and on sexual abuse of a minor, as you're focusing on, because the very lack of probable cause only requires a fair probability based on all of the circumstances. And the fact that the FBI didn't immediately act doesn't mean that there couldn't still be and was a fair probability of sexual abuse of a minor based on the bragging comments that he made and the photographs that he sent. Well, it seems to me that exigency is something that's determined from the facts that are revealed in the application and the information available. The fact that a public official doesn't get around to doing something about it as quickly as perhaps they should doesn't mean that the circumstances weren't exigent. Where one looks to see whether it was exigent is by what does the information show? Does the information reveal circumstances that cause concern about ongoing abuse of a child? Yes, Your Honor, as you point out, if that were the rule, then any time law enforcement was negligent, then it would undermine the probable cause finding. And I don't think that's consistent with relevant law. Finally, turning to the execution of the search warrant, the officers acted reasonably.  Both were specifically linked to the evidence and the messages and photographs providing probable cause, and there's no evidence that they exceeded the contemplated limits of the warrant. I'd just like to return to the warrant to make one point, which is that Paragraph 4B and Subparagraph C also offered some guidance to the officers to seize records and documents that are stored on a computer or cell phone and specifically talked about any and all photographs depicting sexual conduct by a child and or minors engaged in sexually explicit conduct. And that's Subparagraph D of Paragraph 4 of the warrant. And Subparagraph C refers to any recorded, and I'm omitting some language, material, the possession of which constitutes a violation of Article 263 of the New York State Penal Law. So that did also give the officers some guidance in addition to the over-broad citations to the articles of the New York State Penal Law. For all of these reasons, the government respectfully requests that you affirm the opinion of the District Court because this is not a case where there is sufficiently culpable conduct that determines the total cost of suppression of evidence. Thank you, Counsel. We'll hear rebuttal. Thank you, Your Honor. Very briefly, Your Honor, as you said before, it's also a problem called differential between pornography and sex abuse. It's not necessarily the point. The fact that a photograph was not, admittedly not child pornography, but the fact that it gives such a rise of influence to a town justice that it is child pornography, we find that we believe that that does substantiate the deliberate directness of Rosen and his conduct, and that this court should hold its finding in Rosen under the factual circumstances here, especially with respect to the lack of investigation, the lack of a child affidavit. And again, just with respect to Rosen, Rosen was a clear mistake that was in the warrant and not presented in the warrant application. And the officer there wouldn't have a chance to apply it. Here, this particular officer, a member of the FBI task force, chose to go to a local county town justice, chose not to go to the United States District Court judge, and went there to order the evidence signed. Thank you. Thank you both. We'll take the case under adjournment.